(CHANCERY.)

## J. & T. BARR v. LAPSLEY ET AL.

A question under a bill in equity, to obtain a specific performance of an alleged agreement to receive a quantity of cotton bagging, at a specified price, in satisfaction of certain judgments at law. Bill dismissed.

APPEAL from the circuit court of the district of Columbia. This cause was argued by *Jones*, for the appellants and complainants, and *Harper*, for the respondents and defendants

JOHNSON, J., delivered the opinion of the court. The object of this bill is to obtain a specific performance of an alleged agreement to receive a quan-

March 6th.

tity of cotton bagging, at a specified price, in satisfaction of certain judgments at law. The defendants deny that the circumstances proved ever rendered the agreement final and obligatory upon them; and this is the principal, perhaps the only, question the case presents.

It appears that the complainants were indebted to one West, who assigned this debt, (then unliquidated,) together with the residue of his estate, to Lapsley et al.; that Lapsley liquidated the debt with the Barrs, and took their notes payable at different periods, making up, together, the amount due. These notes having become due, and judgment being recovered on some of them; in October, 1811, the Barrs addressed a letter to Lapsley, in which they offer to pay him in cotton bagging, at thirty-three cents per yard, by instalments, at certain periods. On the 17th of December, in the same year, Lapsley answered their communication, and the following words, contained in that letter, are all that the court deem material to the point on which they propose to found their decision. " We are willing to take cotton bagging in liquidation of the three last notes, delivered at the period you propose, but not at the price you offer it." " We expect that you give us satisfactory accounts for the punctual performance of your engagements, and to this effect we *shall direct* Mr. M'Coun, to whom we propose to write by the *next mail.*" On another passage of this letter, and a letter written by West, on the 18th of December, it has been contended, that certain conditions were imposed upon the Barrs, which it was

incumbent upon them to comply with, before they could claim the benefit of the offer contained in Lapsley's letter. But, as the opinion of this court is made up on a ground wholly unaffected by this question, we deem it unnecessary to notice this point. It appears that Lapsley never, in fact, instructed M'Coun on the subject of this letter of the 17th of December: But Warfield, the agent of the Barrs, (who were absent from home on the receipt of that letter,) supposing his principals to be referred to M'Coun as the authorized agent of Lapsley, notified to him the acceptance of Lapsley's offer, and remained under the impression that the agreement had become final, notwithstanding M'Coun's declining, altogether, to act, for want of instructions. Lapsley, on the other hand, alleges, that the notification of acceptance ought to have been made to himself, and assigns the want of an answer from the Barrs as his reason for never having given instructions to M'Coun.

This state of facts presents an alternative of extreme difficulty. On the one hand, Lapsley, by writing that he shall direct M'Coun by the next mail, plainly pointed to a mode of expediting the conclusion of the agreement, through the agency of a representative on the spot, and when he intimated his intention to write by the next mail, showed that it was not his intention to await Barr's answer. This was well calculated to delude Barr into the idea that Lapsley would recognise no notification but that which should be made to M'Coun. On the other hand, how far could M'Coun, unempowered, unin-

structed as he was, legally act, to bind Lapsley by his acceptance of the notification? Or, if he had received instructions from Lapsley, what obligation was he under to have undertaken the agency? Under the pressure of this dilemma, there is but one principle to which the court can resort for a satisfactory decision. Something remained for Barr to do. The notification of his acceptance was necessary to fasten the agreement upon Lapsley. For this purpose, he very rationally addressed himself, in the first place, to M'Coun; and the reference to Lapsley's letter would have been a sufficient excuse for not returning an answer until a reasonable time had elapsed for M'Coun to receive the expected communication from Lapsley. But when he found M'Coun uninstructed, and unwilling to act under the letter addressed to Barr, his course was plain and unequivocal. A letter to Lapsley, transmitted by the mail, would have put an end to all doubt and difficulty. This is the method he ought to have pursued, and for not having pursued this course, we are of opinion that the bill was properly dismissed below.

Decree affirmed.[a]

a In England the court of chancery will not, in general, entertain a bill for a specific performance of contracts for the sale of chattels, or which relate to merchandise, but leaves the parties to their remedy at law, where it is much more expeditious. One exception to this general rule is where the agreement is not final, but is to be made complete by subsequent acts, without which it would be deemed imperfect at law. 3 *Atk.* 383. Buxton v. Lister et al. 1 *Pere Will.* 570. *Bunb.* 135. 10 *Ves.* jun. 161. The ground upon which a specific performance is refused, in these cases, is, that an adequate remedy exists at law, where damages

may be recovered, and that the value of merchandise varies so much at different times, and under different circumstances, as to render it frequently unjust to compel a specific performance. But where the question was, upon what terms a party should be relieved against the penalty of a bond which had been forfeited, for not transferring stock at a given day, according to his agreement, the English court of chancery decreed him to transfer the stock in specie, and to account for all dividends accrued since he ought to have transferred it. 2 *Vern.* 394. 1 *Bro. Parl. Cas.* 193.