Lessel vs. Zillmer.

Lessel, Respondent, vs. Zillmer, Appellant.

*December 21, 1899 — January 9, 1900.*

*Sales: Consideration: Statute of frauds: Burden of proof: Pleading:
Amendments: Prejudicial error.*

1. Defendant purchased from the mortgagees of M., an insolvent, his
   stock of goods inventoried at $41,000, under an agreement to pay
   the first two mortgagees $18,000 and plaintiff, the third mortgagee,
   the amount of her mortgage, about $4,000, out of the profits realized
   above the $18,000. *Held,* that the receipt by defendant of the prop-
   erty purchased constituted a consideration for his promise to pay
   plaintiff her debt.
2. Defendant's promise to pay was not a promise to pay M.'s debt, as
   such, but to pay a sum, limited by the amount of that debt, as
   purchase price of the goods received by him, and was not within the
   statute of frauds.
3. In an action for accounting, where the plaintiff proved delivery to
   defendant of goods of the ostensible value of $41,000, the disposition
   of which had been in his discretion and exclusively within his
   knowledge, the burden fell on him to account fully, and to prove,
   if he so claimed, that his disposal of the goods had yielded less than
   plaintiff's claim.
4. Permitting an amendment of a complaint is not prejudicial error,
   where the judgment recovered is on the cause of action stated in
   the original complaint.

Appeal from a judgment of the superior court of Milwau-
kee county: Geo. E. Sutherland, Judge. *Affirmed.*

One H. S. Mack, a wholesale clothing manufacturer and
dealer, made a voluntary assignment on December 19, 1894,
thereby transferring to his assignee a stock of goods inven-
toried at over $41,000, incumbered, however, by a number
of mortgages, the first and second of which together aggre-
gated $20,000, and the third of which was to plaintiff to
secure an indebtedness slightly less than $4,000. The attor-
ney for the first two mortgagees advertised in local and
trade papers for private sale of the stock, and received no
offer exceeding $17,500 cash. This was a disappointment

to all parties, as it had been expected the stock would be readily salable at an amount more than sufficient to cover the first three mortgages.

The agent of the first and second mortgagees thereupon explained the situation to the plaintiff; told her that, in his opinion, there was a large margin of value in the stock of goods above the price offered and her mortgage; and suggested to her that she secure some one able to purchase and dispose of the goods, who would pay a little more than the offer already received, and also the amount of the plaintiff's mortgage. She went to the defendant, *Zillmer*, her brother-in-law, who was also engaged in the clothing business, and on whom she evidently relied for advice and assistance, and stated the situation to him. He, after investigating the stock and negotiating with the agent of the first two mortgagees, found that they would accept $18,000 in full of their interest, to be paid on time, as he could realize it out of the goods. Thereupon he agreed with her and the agent for the first and second mortgagees to make the proposed purchase, and to pay her the amount of her mortgage out of the profits above the purchase price, to which she assented; and, in pursuance of that agreement, the goods were conveyed to the defendant by the first and second mortgagees, and he immediately proceeded to dispose of them in ordinary wholesale and jobbing trade, completing the manufacture of a considerable portion, which were at the time of the purchase only partially manufactured.

In January, 1896, he gave to the plaintiff $915, which, together with $285 he had paid to or for her meanwhile, made $1,200, stating to her his hope that out of the remaining remnant of the goods he might realize for her a total of $2,500, but demanding from her a receipt recognizing the payment of the $1,200 as a gratuity. Thereupon she consulted attorneys, who demanded of him an accounting,— the goods having been substantially all disposed of,— to

Lessel vs. Zillmer.

which demand he responded by repudiating any liability to her whatever. Suit was commenced, alleging substantially the foregoing facts and agreement. Afterwards, on motion, plaintiff was allowed to amend the complaint by adding allegations to the effect that the purchase of the goods by the defendant was in the capacity of agent or trustee for the plaintiff, but under the same agreement as to paying plaintiff out of the proceeds thereof the amount of her mortgage. The demand was for the recovery from the defendant of the balance due her on her note and mortgage, amounting at the time of the trial to about $3,100.

The case was referred to a referee, who found the purchase of the goods upon substantially the agreement above stated, but held, as matter of law, that there was no consideration for the defendant's promise to pay the plaintiff, and that plaintiff was not entitled to recover. He also stated an account finding that the defendant had received, over and above the $1,200 paid to the plaintiff, $9 in money, held uncollected accounts to the amount of $449.45, and had on hand a remnant of goods of the value of $220.89, being twenty-five per cent. of their inventory value of $883.63. Exceptions being alleged to these findings and conclusions of law, the court adopted the findings of fact as to the making of the agreement and the acquisition of the goods, but held, as matter of law, that there was a sufficient consideration, and that he was liable to the plaintiff for such profits as he had realized above the price paid and the expenses incurred in manufacturing and selling goods, to an amount not exceeding the balance due on her note and mortgage, and again referred the matter to a second referee to state the account in accordance with such decision. The second referee found that the plaintiff had received from the goods, either in money, or by the taking of goods into his own stock, and disposing of them there at prices not disclosed by him, an amount exceeding the balance of the plaintiff's note

Lessel vs. Zillmer.

by about $1,000 at least. This report was adopted by the court, and judgment rendered in favor of the plaintiff for $3,169.85, from which the defendant appeals.

For the appellant there was a brief by *Christian Doerfler*, and oral argument by *H. W. Nickerson*.

For the respondent there was a brief by *Timlin, Glicksman & Conway*, and oral argument by *Nathan Glicksman*.

DODGE, J.  1. The extended discussion over the existence or sufficiency of any consideration for defendant's admitted promise to pay plaintiff the amount of her claim out of the profits of the sales of the mortgaged stock of goods is hardly justified by the situation shown practically without controversy. It is undisputed that the first, second, and third mortgagees of this stock, supposed by all to be worth much in excess, consented to a transfer thereof to defendant upon certain promises made by him, including that above stated, and that the transfer was made and accepted in pursuance of that consent. No consideration for a promise to pay the purchase price can be more complete than the receipt of the property purchased. The situation is not changed by speculation as to whether defendant might have obtained this stock of goods without making the promise to plaintiff or without her consent, for he did not do so. Equally futile is conjecture as to whether plaintiff could have realized anything if the arrangement with defendant had not been made, or whether she could have found another purchaser for the goods on terms to protect her mortgage interest therein. She had no occasion to make any effort to do so, because the agreement sued on was made, and for that reason refrained. Not dissimilar in principle, though much weaker in their facts, are *Treat v. Hiles*, 68 Wis. 344, and *Rollins v. Hare*, 15 Ind. App. 677. The conclusion of the trial court that defendant made a binding agreement, upon sufficient consideration, was clearly right.

The foregoing statement of the actual transaction disposes of the further objection that defendant's promise was void, under the statute of frauds, as being one to answer for the debt or default of Mack. It was simply a promise to pay plaintiff for her interest in the goods purchased by defendant, out of the proceeds thereof, a sum measured, in the maximum, by the amount of that debt, which itself measured her interest. It was wholly original, and was independent of Mack's obligation to pay. Indeed, it is even doubtful whether the sums actually paid by defendant affected or reduced Mack's debt at all. If they did so, such result came, not from the agreement between plaintiff and defendant, but from Mack's right to insist that anything realized by plaintiff from her security should be applied on her debt against him. Nor would a discharge of Mack from his debt to plaintiff have had any effect upon defendant's duty or liability. It was not a promise to pay Mack's debt, as such, but to pay a sum, limited by the amount of that debt, as purchase price of the goods received by defendant. Under all the authorities, it was not within the statute of frauds. *Putney v. Farnham*, 27 Wis. 187; *Young v. French*, 35 Wis. 116; *Weisel v. Spence*, 59 Wis. 301; *Cunningham v. Brictson*, 101 Wis. 378. ·

2. We find nothing in the record to justify us in repudiating the finding of the second referee that defendant realized profits in excess of the amount due on plaintiff's note, which finding was accepted by the trial court. The legal basis adopted by the referee was that, when plaintiff had proved delivery to defendant of goods of the ostensible value of over $41,000, the disposition of which had been in his discretion and exclusively within his knowledge, the burden fell on his shoulders to account fully, and to prove, if he so claimed, that his disposal of the goods had yielded proceeds less than plaintiff's claim. Of the correctness of this basis, there can be no doubt. The principle is element-

ary that on him who has the exclusive knowledge rests the burden of proof, and especially so with reference to dealings with goods held in a fiduciary capacity. The defendant not only failed to prove how or at what prices he had disposed of a considerable share of the property, but admitted that he had deliberately destroyed the record evidence thereof by most gross spoliation of his account books,— by actually cutting out from the sales book and ledger the leaves containing the entries which would have furnished the needed information. Application of the rule, *Omnia præsumuntur contra spoliatorem* (*Dimond v. Henderson*, 47 Wis. 172), might well have held defendant to account for these goods at their inventory value; but the referee stopped short of that extreme, and charged him only the average prices shown to have been received for others of the goods. Upon that basis, he finds that defendant's receipts must have exceeded the amount adjudged to the plaintiff by approximately $1,000. Other facts, such as the diversion of selected goods, of inventory value $7,200, into his own private business, where presumably they produced full trade prices, though he accounted for them at only $2,400, serve to confirm the conclusion that defendant will have realized a substantial profit to himself after carrying out his promise to the plaintiff.

3. The alleged error in permitting amendment of the complaint was without prejudice, for the judgment recovered is upon the cause of action stated in the original complaint, and not upon that brought in by the amendment.

*By the Court.*— Judgment affirmed.